## SAMUEL F. EDWARDS, RESPONDENT, *v.* THE NEW YORK AND HARLEM RAILROAD COMPANY, APPELLANT.

*Lessor — liability of, for injuries sustained by one coming upon the premises at the request of the lessee, by reason of their being unsuited to the purposes for which they were used by the lessee.*

One Kelly leased from the defendant a building owned by it, for the purpose of having therein a pedestrian contest, to which the public were to be admitted on the payment of an entrance fee. All changes in the interior which Kelly might desire to make were first to be submitted to and approved by the defendant. In the building was a temporary gallery which had been erected by a society when holding a masquerade ball therein. It was divided into boxes capable of holding from four to six persons which were supplied with tables and chairs; and it was sufficiently strong for that purpose. Kelly removed the tables and chairs and allowed the boxes to be filled by a boisterous and excited crowd, and while the crowd was moving about and stamping the gallery gave way and fell upon and injured the plaintiff.

In an action brought by him against the lessor to recover damages for the injuries so sustained, *held*, that as the injuries resulted not from any defects existing at the time of the demise, but from the manner in which the premises were used by the lessee, the defendant was not liable.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to recover damages sustained by the plaintiff from injuries received by the falling of a gallery, forming part of the building known as Gilmore's Garden situated in the city of New York, bounded by Twenty-sixth and Twenty-seventh streets, Madison and Fourth avenues. The building is owned by the defendant and was rented by it to James E. Kelly from the 8th to the 18th of March, 1879, for t' e purpose of giving therein a pedestrian exhibition which was known as the "International Walking Match." At which exhibition the public were generally invited to attend and were permitted to witness the contest upon the payment of an admission fee.

The gallery in question was erected a short time prior to the demise to Kelly, and was used by the Arion Society which had leased the premises for the purpose of giving a masquerade; it was supported by pillars and divided into boxes capable of holding from four to six persons with a table, and with the intention to have the said boxes occupied by persons who could therein take refreshments from the tables and look down upon the carnival below if desired. This gallery was sufficient for that purpose, and was so used on the occasion of the Arion festival.

A large number of persons attended the walking match on every day from the opening, and a large number of persons occupied the boxes into which the gallery was divided, the tables and chairs having been previously removed therefrom. On the evening of the 12th day of March, 1879, while the gallery was so occupied and the boxes crowded by excited persons standing and moving about, it fell, thereby causing injuries to the plaintiff.

By the terms of the demise to James E. Kelly he was to surrender the premises at the end of the term in precisely the same condition as when rented to him. Any alterations contemplated by him were first to be submitted to the president or vice-president of the defendant for approval, and if such approval was obtained and alterations made the premises were to be restored at the end of the term to their original condition, all at the expense of the lessee. The only

alteration applied for or made by the lessee was to have the ground floor or platform taken up and a track laid thereon inclosed with a railing and the building of a reporters' stand.

*Frank Loomis*, for the appellant.

*Morris & Pearsall*, for the respondent.

DYKMAN, J.:

Owners and occupants of real property are called on for the exercise of ordinary care and diligence to maintain their premises in safe condition for access to all persons coming thereto legitimately. This obligation, however, does not rest on the owner where he has made an entire surrender of premises to a lessee, unless indeed they are let for a purpose for which they are known by him to be unfit, or have so fallen into decay as to become a private nuisance. If, therefore, injuries result from defects in demised premises to persons induced to visit them by the tenant, he, and not the landlord, is responsible for the injuries, even though the defects existed at the time of the execution of the lease. If premises are not unsafe at the time of the lease, and only become so by the manner of their use by the lessee, the landlord incurs no responsibility by reason thereof. Finally, the lessee in possession is responsible for injuries resulting from defects in the premises, and the lessor, in the absence of fraud or contract to repair, is not liable to the tenant or others for their condition. (Sherman and Redfield on Negligence, §§ 498, 503; *Jaffe* v. *Harteau*, 56 N. Y., 401; *Clancy* v. *Byrne*, 56 id., 132; *Swords* v. *Edgar*, 59 id., 34; *Ditchett* v. *Spuyten D., etc., Railroad*, 67 id., 427.)

There is no implied covenant or warranty on the part of a lessor of real property that the premises are fit for occupation or use, and unless the lessee protects himself by covenants he takes all the risk of its quality and condition, and among such hazards is the responsibility to strangers who come to the premises by his invitation.

Scrutinized in the light of these principles the case of the plaintiff is found wanting. At the time the defendant leased the garden where the plaintiff received his injuries it was in safe condition for all uses to which it had been applied. It was neither unsafe nor a

nuisance, and the defendant made no agreement for change or repair. The lessee might make alterations. The lessor had no notice of defects. The plaintiff visited the garden on the invitation of the lessee and for his benefit, and the whole place was subject to the management of the lessee. It is true the defendant had an agent to look after the building, but his presence imposed no restraint or limitation on the lessee. He was in full control of the place, and congregated there an unusual number of persons, who were noisy and uneasy, and broke down a platform unsuitable for so much strain. There was no warranty of the suitableness of the place for the purposes for which it was used, and the premises had not become a nuisance at the time of the demise, and the injury arose neither from the nonfeasance nor the misfeasance of the defendant.

Reliance is had by the plaintiff on the case of *Camp* v. *Wood* (76 N. Y., 95), but the similarity to this is not sufficient. There the defendant owned the building and let it for a night for the purpose of a dance, and it was admitted by the pleadings that the public were invited to the hall with his consent, and were admitted on application and payment of a fee, and so the defendant himself held out to the public that it was safe, and the plaintiff and others were there on his invitation. He was, therefore, within the first principle stated above.

The judgment must be reversed and a new trial granted, with costs to abide the event.

Barnard, P. J., and Gilbert, J., concurred.

Judgment and order denying new trial reversed, and new trial granted, costs to abide event.