No. 40,786

MAXINE TRIMBLE, *Appellant,* v. L. H. SPEARS, *Appellee* (and L. D. SLOOP, *Defendant*).

(320 P. 2d 1029)

Opinion filed January 25, 1958.

*Herbert A. Marshall,* of Topeka, argued the cause and *Allen Meyers, Philip C. Gault, Doral H. Hawks* and *Turner M. Murrell,* all of Topeka, were with him on the brief for the appellant.

*James L. Grimes, Jr.,* of Topeka, argued the cause and *Clayton E. Kline, M. F. Cosgrove, Robert E. Russell, Willard N. Van Slyck, Jr., William B. McElhenny* and *O. R. Stites, Jr.,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

HALL, J.: This is an appeal from an order sustaining a demurrer to an amended petition.

The plaintiff and appellant brought an action for damages against the owner of a business building, L. H. Spears, and a tenant in the building, L. D. Sloop. The court sustained the separate demurrer of the defendant L. H. Spears to the plaintiff's amended petition. The tenant and defendant Sloop is not involved in this appeal.

The plaintiff filed an original petition to which the court sustained a motion to strike portions thereof. A motion to make more definite and certain was withdrawn. The demurrer was made to the amended petition. The allegations pertinent to this appeal are as follows:

The plaintiff alleged that the defendant and appellee, L. H. Spears, was the owner of a building on the Main Street in Rossville, Kansas; that the defendant, L. D. Sloop, was a tenant occupying a room at the west end of the building which was used as a dry cleaning establishment; that the building was occupied at the east end by a barber shop; that the defendant and owner Spears maintained and had control of the building; that along the south side of the building, located and maintained by Spears, was a paved walk for the use of customers of the cleaning shop; that at the west end of the walk there was a sign with the words "Rossville Cleaners."

The plaintiff further alleged that the owner Spears kept and maintained along the walk on the south side of the building three doorways of similar construction and appearance; that the west doorway opened into the cleaning shop and the east doorway, which was fastened shut, opened into the rear of the barber shop; that the middle doorway opened into a basement stairway which led directly to the basement of the building from the threshold of the doorway; that this middle door was not fastened shut and had no warning sign or other device to notify the public that it led to an open stairway to the basement.

The plaintiff alleged that by reason of the location and appearance of this middle door it could be and was reasonably mistaken by plaintiff and members of the public for the door to the cleaning shop.

The plaintiff alleged that the maintenance and keeping of the middle doorway in close proximity to the doorway of the cleaning shop and in an unfastened condition without warning signs, guards or rails, constituted negligence and carelessness on the part of the owner L. H. Spears; that the defendant Sloop also knew of the existence of the unfastened door leading to the basement steps and negligently and carelessly permitted the door to so remain.

The plaintiff alleged that on the 8th day of October, 1955, she went to this building owned by Spears for the purpose of taking to the cleaning shop a pair of her husband's trousers; that the plaintiff had not previously been a customer of the cleaning shop but knew the shop was located in this building; that she walked along the concrete walk and saw the sign at the west end of the walk; that she came to a door along the walk which reasonably appeared from its location and appearance to lead to the cleaning shop, opened the door and stepped across the threshold into the building, and fell down the stairway to the basement; that she had mistakenly opened the door leading to the basement steps; that she was injured and damaged by these negligent acts of the defendants and each of them and that her injuries and damages were the direct and proximate result of their negligent acts.

When a general demurrer is lodged against a petition, the petition is to be liberally construed in favor of the pleader, and he is entitled to all reasonable inferences to be drawn therefrom. (*Clark v. Hildreth,* 179 Kan. 243, 293 P. 2d 989; *Babcock v. Dose,* 179 Kan. 298, 293 P. 2d 1007; *Rupe v. Smith,* 181 Kan. 606, 313 P. 2d 293.)

Where a motion to make more definite and certain has been filed against an original petition, and such motion is withdrawn, as occurred in this case, the rule of strict construction cannot be invoked. (*Clark v. Hildreth,* supra.)

The plaintiff's action is brought on the theory of the liability of a landlord to persons other than a tenant injured on a part of premises retained in the landlord's possession. This point is not in controversy. The appellee admits that the building, other than the rented rooms, the walk, the middle door and the stairs to the basement, were reserved by and under the control of the landlord.

Does plaintiff's petition state a cause of action on this theory?

Similar factual situations presented by this petition have been much litigated over the years. The general rules of law governing the liability of a landlord under such circumstances are pretty well

established but in determining whether the proximate cause of an injury to a person, due to the defective condition of the premises retained, particularly of the access to, or the halls or stairways in a building occupied by tenants, is the negligence of the landlord, varies a great deal in the recorded cases.

32 Am. Jur., Landlord and Tenant, § 688, p. 561 states the general rule as follows:

"It is generally held that where the owner of premises leases parts thereof to different tenants and expressly or impliedly reserves other parts thereof, such as entrances, halls, stairways, porches, walks, etc., for the common use of different tenants, it is his duty to exercise reasonable care to keep safe such parts of which he so reserves control, and if he is negligent in this regard, and a personal injury results by reason thereof to a tenant or to a person there in the right of the tenant, he is liable, provided the injury occurs while such part of the premises is being used in the manner intended. . . ."

### And 32 Am. Jur., Landlord and Tenant, § 691, p. 569:

"A distinction with respect to the liability of the landlord is made between persons who are upon the premises upon an express or implied invitation of the tenant and mere licensees or trespassers. Persons coming upon the premises merely for their own convenience or profit are mere licensees or trespassers to whom the landlord does not owe a duty to exercise reasonable care to keep the premises safe. The landlord owes to mere licensees and trespassers a duty not to set a trap for them or to injury them by a wilful act. . . ."

See also, Restatement of the Law of Torts, Vol. 2, Negligence, §§ 360, 361 (and comments thereon); 52 C. J. S. Landlord and Tenant §§ 418 (a), 428; The Law of Torts, Harper and James, Vol. 2, § 27.17, p. 1516.

Harper and James state the rule this way:

"The duty owed by a landlord to his tenants and their visitors with respect to common hallways, approaches and the like, which the landlord retains in his possession for the use of his tenants, is sharply different from the duty owed with reference to the leased premises themselves: it is the full duty of reasonable care to make conditions reasonably safe and includes the obligation of care to discover unknown perils, as well as to remedy known ones. Nor is the duty necessarily satisfied by making the danger obvious or by warning. . . .

"The landlord's duty of care in the respect discussed here is generally held to be nondelegable.

"The present duty extends to those parts of the premises over which the landlord retains control but which one or more of his tenants has a right to use as an appurtenance to the lease. This includes hallways and approaches leading to the leased premises, and parts of the roof or basement which the

tenant has the right to use (e. g., for storage or drying clothes). It also includes appliances such as elevators, water or heating systems, and the like. The landlord is also under a similar duty of care to maintain those parts of the structure which remain in his control but are needed for the safety or protection of the leased premises, such as foundations, outside walls, roofs and the like."

And in 52 C. J. S. Landlord and Tenant § 428:

"Where a landlord has retained control over certain parts of the premises leased, he is under a duty to strangers, such as pedestrians, to keep such parts of the premises in a reasonably safe condition, and he will be liable for injuries to a stranger resulting from the defective condition of the parts under his control. The landlord's duty to the public may not be delegated. . . ."

And in Restatement of the Law, Torts, Vol. 2, Negligence, § 360:

"A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe." (p. 976.)

Many of the leading authorities in this field of liability are quite old. A collection of the cases with annotations on the general rule and various aspects of it are found in the Restatement of the Law, Permanent Edition 1932-1944, Torts, §§ 360, 361; Restatement of the Law, 1948 Supplement, Torts, §§ 360, 361; Restatement of the Law, 1954 Supplement, Torts, §§ 360, 361; 46 L. R. A. n. s. (1913) 121, 126; L. R. A. 1915B 387; L. R. A. 1916F 1073, 1077, 1081, 1098; 25 A. L. R. 1273 supplemented in 39 A. L. R. 294; 58 A. L. R. 1412; 75 A. L. R. 154; 97 A. L. R. 220; 25 A. L. R. 2d 364, 444, 496; 26 A. L. R. 2d 468, 610.

The Kansas reports are replete with cases relating to the duties and liabilities of a landlord and tenant but only a few relate to the liability of a landlord to third persons injured on premises retained in his possession. The general rule of liability was recognized in the early case of *Hinthorn v. Benfer,* 90 Kan. 731, 136 Pac. 247. In that case there was a narrow porch or landing of an outside stairway which was used and intended for the use of different tenants in the building. It was connected with a common hallway and a part of the stairway itself. It was in the possession and control of the landlord. While sweeping snow from this porch the tenant's wife was killed when the railing gave way. The court said:

". . . Where a portion of a building is let and the tenant has rights of passageway over stairs and entries in common with the landlord and other tenants, the landlord is bound to exercise reasonable care to render the halls and stairways safe for the uses which he invites others to make of them. (*McGinley v. Alliance Trust Co.*, 168 Mo. 257, 66 S. W. 153, 56 L. R. A. 334; *Readman v. Conway*, 126 Mass. 374; *Looney v. McLean*, 129 Mass. 33, 37 Am. Rep. 295.) The facts speak for themselves; the law is so well settled that it is unnecessary to cite other authorities." (p. 733.)

In *Brunsilius v. Farmers & Merchants State Bank*, 143 Kan. 148, 53 P. 2d 476, which also involved a defective stairway where a client of a tenant attorney was injured in a fall on the stairway of a two story building. The court said:

"It may be conceded that this was a stairway and hall for the common use of tenants on the second floor of the building, and that defendants were under the duty to use due care to keep them in a reasonably safe condition (*Hinthorne v. Benfer*, 90 Kan. 731, 733, 136 Pac. 247), and that they would be liable if, by the exercise of reasonable care, they could have discovered the unsafe condition and the risk involved therein, and could have made the condition safe. . . ." (p. 150.)

The rule was again recognized in *DeTarr v. Heim*, 62 Kan. 188, 61 Pac. 689; *Snyder v. Haas*, 175 Kan. 846, 267 P. 2d 467; *Given v. Tobias*, 137 Kan. 58, 19 P. 2d 472; *Donaldson v. Kemper*, 149 Kan. 330, 87 P. 2d 535; *Donaldson v. Kemper*, 152 Kan. 533, 106 P. 2d 1051; *Gillard v. Hoffman*, 103 Kan. 572, 175 Pac. 395; and *Bass v. Hunt*, 151 Kan. 740, 100 P. 2d 696, but was not applied because of the facts in the case. *Bass v. Hunt*, supra, is important here because the court distinguished the rule of *Hinthorn v. Benfer*, supra, from the rule of *Kallenbach v. Manne*, 138 Kan. 797, 28 P. 2d 746; *Reese v. Abeles*, 100 Kan. 518, 164 Pac. 1080, and other authorities relied upon by the parties in this appeal. The rule of these cases applies to the injuries of persons on the premises leased by and in the control of the tenant. In *Bass v. Hunt*, supra, the court said the rule of *Hinthorn v. Benfer*, supra, did not apply because "we cannot agree the undisputed evidence shows that the landlord Cohen was in possession and actual control of the rear room . . . and that defendants had only a permissive use of them. . . ."

To *Kallenbach v. Manne*, supra, should be added the following related cases all distinguishable from the case at bar: *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975; *Murrell v. Crawford*, 102 Kan. 118, 169 Pac. 561; *Bogart v. Lyman*, 142 Kan. 758, 51 P. 2d 918; *Waterbury v. Riss & Company*, 169 Kan. 271, 219 P. 2d 673; *Mann v. Fuller*, 63 Kan. 664, 66 Pac. 627; *Upham v. Head*, 74 Kan. 17, 85

Pac. 1017; *Bailey v. Kelly,* 93 Kan. 723, 145 Pac. 556; *Turner v. Kent,* 134 Kan. 574, 7 P. 2d 513; *Bates v. Stearns,* 141 Kan. 814, 44 P. 2d 278; *Campbell v. Weathers,* 153 Kan. 316, 111 P. 2d 72; *Copley v. Balle,* 9 Kan. App. 465, 60 Pac. 656; *Meecke v. Morquies,* 128 Kan. 423, 278 Pac. 45; *McMillen v. Summunduwot Lodge,* 143 Kan. 502, 54 P. 2d 985; *Jones v. Swatszel,* 145 Kan. 99, 64 P. 2d 555; *Snyder v. McDowell,* 166 Kan. 624, 203 P. 2d 225; *Redd v. Mining Co.,* 101 Kan. 699, 168 Pac. 867; *Headington v. Central Building Co.,* 137 Kan. 350, 20 P. 2d 816; *Branstetter v. Robbins,* 178 Kan. 8, 283 P. 2d 455; *Mitchell v. Foran,* 143 Kan. 191, 53 P. 2d 490; *Zinn v. Hill Lumber & Investment Co.,* 176 Kan. 669, 272 P. 2d 1106.

Both *Mitchell v. Foran,* supra, and *Zinn v. Hill Lumber & Investment Co.,* supra, should be further distinguished. In the Foran case the court held the landlord liable for an injury to a child caused by an awning hook protruding onto the sidewalk. This portion of the building was leased to a tenant. The court relied upon a line of cases as to the duty of a landlord to keep adjacent highways and sidewalks clear. In the Zinn case the court held the landlord liable for injury to a customer caused by an icy entranceway to the leased premises. The court's decision distinguishes *DeTarr v. Heim,* supra; and *Bailey v. Kelly,* supra, and is based primarily on *Turner v. Kent,* supra; and § 359, Restatement of the Law of Torts, Vol. 2, Negligence, relative to the duty of a lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his lessee.

The important fact which distinguishes all of these cases from the case here is that the injury occurred on the leased premises and not on premises reserved or retained under the control of the landlord.

As noted from a reading of the above authorities there are important limitations on this rule of the landlord's liability which are pertinent to the petition under consideration. Of course, the usual rules of negligence, proximate cause and contributory negligence apply. (32 Am. Jur., Landlord and Tenant, §§ 702, 703; and other general authorities cited above.)

A limitation under the majority rule is that actual or constructive knowledge on the part of the landlord of the defect causing the injury is necessary to render him liable. (32 Am. Jur., Landlord and Tenant, § 694.) And this is the Kansas rule. *Brunsilius v. Farmers & Merchants State Bank,* supra, where the court said:

". . . There is no allegation in the petition that the defendants knew of the unsafe condition of the hall and stairway, or that such a condition had existed long enough for them to have known about it and had an opportunity to make the condition safe." (p. 150.)

The plaintiff's petition here alleges that the owner Spears "kept and maintained" the doorway in an unfastened condition with no warning sign or other notice to protect the public. Under liberal construction and reading all the allegations together they sufficiently show actual or constructive knowledge on the part of the landlord of the defect complained of.

By way of further limitation the liability of the landlord is predicated not upon his duty to repair defects coming into existence after the tenant takes possession or in keeping the premises in the condition in which they were before the tenant took possession. It is also generally held not to result from the implied covenant of quiet enjoyment.

Liability is based upon the obligation of the landlord to the tenants of different parts of the same building in reference to the halls, stairways, doors and et cetera of which he has kept in possession for their common use. His liability to persons other than the tenants is based upon the privity of those persons with the tenant who occupies a portion of the premises. In the use of the stairs, hallways, passageways, walks and the like over which the landlord retains control for the benefit of the tenants in common the persons in privity with any tenants are regarded as invitees on the premises either by express or implied invitation and the landlord owes them a duty to exercise ordinary care to keep those portions of the premises in safe condition.

A determination must be made where personal injuries to a tenant or a person in the right of a tenant were received while using a portion of the landlord's premises *not expressly included in the tenant's lease or used in common by the tenants.* Liability under these circumstances depends upon the particular use made by the tenant or the person in privity or right with him. A tenant in his use of certain parts of the landlord's premises may be an invitee, a trespasser or a mere licensee. Of course, if the tenant or other person is a mere licensee or trespasser, the landlord no longer owes a duty of ordinary care but only a duty not to set a trap for them or injure them by a willful act.

And a further determination must be made between *premises not*

*intended for any use* by the tenant and other persons and *premises which are permissive in character.* If no use whatsoever is intended, and, of course, no invitation can be implied, no liability attaches. If permissive in character the landlord may be liable. If permissive there must be invitation expressed or implied. The particular use made must always be within the scope of the invitation.

The landlord's duty and liability also extends to persons expressly or impliedly invited by the tenant. It also extends to all of those who have lawful occasion to visit a tenant for social purposes.

A good example of the application and limitations of the general rule is found in *Roessler v. O'Brien,* 119 Colo. 222, 201 P. 2d 901. In that case a guest of a tenant whose apartment was located on the first floor, instead of going out the front door of the apartment, went up the rear stairs to the second floor against the tenant's advice, went out on the fire escape through an exit on the second floor and was killed as the result of a fall. In a suit against the landlord, the court said:

"Here it is not questioned that the entrance of the apartment house and through the hallway to Johnson's apartment afforded a reasonably safe means of ingress and egress, and there is no contention raised that respecting the same defendant was in anywise negligent. Defendant's alleged negligence for which recovery is sought here all has reference to conditions on the second floor of the apartment house; the door leading therefrom to the fire escape, and the construction of the fire escape itself; consequently, *it becomes necessary to inquire what duty defendant owed decedent respecting the same.* When decedent entered the apartment house, and while a guest of Johnson, he was unquestionably an invitee, and as to him defendant was under duty to maintain the premises where the invitee might be expected to go in a reasonably safe condition for their intended use and was under a like duty to the invitee to give him warning of any known latent or concealed defects. *Gotch v. K. & B. Packing and Provision Company,* 93 Colo. 276, 25 P. (2d) 719; *Rudolph v. Elder,* 105 Colo. 105, 95 P. (2d) 827.

"We have also held that in order to establish a defendant's liability on account of negligence it is incumbent upon plaintiff to show that the defendant owed him a legal duty in the capacity in which he was acting at the time of the injury. *Hooker v. Routt Realty Company,* 102 Colo. 8, 76 P. (2d) 431. . . . it is obvious that its purpose was for use as a means of escape from the apartment house in event of fire therein. There is no evidence whatever that it was used, or intended to be used, for any other purpose. What decedent's object was in going upon the stairway to the second story of the apartment house, opening the door to the fire escape, and going thereon is inexplicable, especially in view of the warning of Johnson. Decedent was not expressly or impliedly invited, either by Johnson or the owner, to go to the second floor or to use the fire escape, and when he ostensively started home

and instead went up onto the fire escape, he was using it for a purpose for which it was not intended or constructed. It is not necessary for us here to determine whether by departing from the way usually and customarily traveled in leaving Johnson's apartment to go to the street decedent became a licensee or trespasser, but certainly it cannot be successfully contended that in going on the second floor and the fire escape he still retained the status of an invitee. By departing from the usual course traveled in entering or leaving the apartment, decedent became either a licensee or trespasser, and then the only duty which defendant owed him was not to wilfully and intentionally inflict an injury. *Gotch v. K. & B. Packing and Provision Company,* supra; *Hooker v. Routt Realty Company,* supra; *Averch v. Johnson,* 90 Colo. 321, 9 P. (2d) 291; *Windsor Reservoir & Canal Co. v. Smith,* 82 Colo. 497, 261 Pac. 872; *Lunt v. Post Printing & Publishing Company,* 48 Colo. 316, 110 Pac. 203; *Watson v. Manitou & Pikes Peak Railway Co.,* 41 Colo. 138, 92 Pac. 17." (p. 227.) (Emphasis ours.)

For general authority and complete discussion of the rule and its limitations see 32 Am. Jur., Landlord and Tenant, §§ 687 through 704; 52 C. J. S. Landlord and Tenant § 428; The Law of Torts, Harper and James, Vol. 2, § 27.17, p. 1516; and Restatement of the Law of Torts, Vol. 2, Negligence, §§ 360, 361.

For annotations on permissive or nonintended uses see L. R. A. 1916F (VIII) 1097; 30 A. L. R. 1390 supplemented in 49 A. L. R. 564.

Kansas has recognized some of the limitations of the rule.

It recognized a *nonintended use* in the early case of *Gillard v. Hoffman,* supra. In that case the defendant landlord placed on the roof of his building a ladder reaching near a window of the third story, for use as a fire escape. The rooms of the third story, which were leased to a tenant, were reached by means of a stairway. The tenant's janitor, finding himself without a key to the door of the rooms undertook to gain access to them by means of the ladder. The ladder slipped and he was injured. The court held that the landlord owed the janitor no duty to make the fire escape safe for the use to which he appropriated it.

On the matter of privity between the tenant and the person injured see *Bailey v. Kelly,* supra. On invitation expressed or implied and whether invitee, licensee or trespasser see *Bogart v. Lyman,* supra; *DeTarr v. Heim,* supra; *Copley v. Balle,* supra; *Jones V. Swatszel,* supra.

From an examination of these authorities it is readily apparent that the amended petition here presents no serious problem as far

as the general rule is concerned. The difficulty, if any, arises on the point of the opening of the middle door by the plaintiff. When she entered the premises and occupied the walk she was at all times the invitee. Making the most favorable assumption in her favor, she had as against the landlord the same rights as the tenant, but no greater rights than his. What about the middle door? Was it a part of the common passageway? Was the plaintiff an invitee when she opened it or did her status change? Was its use permissive by implied invitation or nonintended?

The Kansas cases are not of much help on these points. But cases involving similar facts have often been determined in other jurisdictions. Most of them hold either that the plaintiff retains the status of an invitee or that the use is permissive by implied invitation. Some hold it to be a nonintended use.

A landmark case in point is *Foren v. Rodick*, 90 Me. 276, 38 Atl. 175. There the plaintiff sustained injuries by falling into the cellar. The first floor was divided into stores and the second into rooms which were leased for offices. The main entrance to the stairway leading to the second floor was about midway of the length of the building and was closed by double doors at the foot of the stairs. A short distance from these doors was a single door opening inward to the cellar. It was unfastened and there was no railing or other safeguard to prevent a person from stepping over the cellar wall and falling into the cellar. On the evening of the accident the plaintiff was passing along on the sidewalk intending to go up to a doctor's office. She was not familiar with the premises but she saw the doctor's sign, and supposing it indicated the cellar door as the place of entrance, she opened the door, stepped over the wall, and fell to the bottom of the cellar. The court said:

"Under these circumstances, upon well-settled and familiar rules of law, all persons having occasion to visit any of the offices on the second floor on legitimate business with any of the defendants' tenants, had an implied invitation from the defendants to use the common entrance and passageway for that purpose; and the defendants owed a duty to all such persons which carried with it an obligation to exercise reasonable care and prudence to provide a safe and suitable entrance to such offices, and to have the approaches thereto so constructed and maintained that visitors would not be liable to step into dangerous pitfalls by reason of misleading doors and deceptive landings. *Stratton v. Staples*, 59 Maine, 94; *Campbell v. Portland Sugar Co.*, 62 Maine, 552; *Sawyer v. McGillicuddy*, 81 Maine, 318; *Shipley v. Fifty Associates*, 101 Mass. 251; *Readman v. Conway*, 126 Mass. 374; *Looney v. McLean*, 129 Mass.

33; *Learoyd v. Godfrey*, 138 Mass. 315; *Gordon v. Cummings*, 152 Mass. 513; *Hayward v. Miller*, 94 Ill. 349, (S. C. 34 Am. Rep. 229); *Camp v. Wood*, 76 N. Y. 92; *Gilloon v. Reilly*, 50 N. J. L. 26." (p. 279.)

There are many other equally persuasive cases where the factual situation is similar to the case at bar. (*West v. Kingsway Realty Corporation*, 218 App. Div. N. Y. 494, 218 N. Y. S. 672; *Camp v. Wood*, 76 N. Y. 92, 32 A. R. 282; *McGinley v. Alliance Trust Co.*, 168 Mo. 257, 66 S. W. 153; *Smith v. Mottman*, 194 Wash. 100, 77 P. 2d 376; *Manning v. Sherman*, 110 Me. 332, 86 Atl. 245; *Bunnell v. Waterbury Hospital*, 103 Conn. 520, 131 Atl. 501; *Swenson v. Slawik*, 236 Minn. 403, 53 N. W. 2d 107.)

There are cases on similar facts which have reached different conclusions. Most of them are from Massachusetts which follows a more restrictive rule. (*Bender v. Weber*, 250 Mo. 551, 157 S. W. 570; *McCain v. Majestic Bldg. Co.*, 120 La. 306, 45 So. 258; *Ryerson v. Bathgate*, 67 N. J. L. 337, 51 Atl. 708; *Rohrbacher v. Gillig*, 203 N. Y. 413, 96 N. E. 733; *Morong v. Spofford*, 218 Mass. 50, 105 N. E. 454; *McCarthy v. Isenberg Bros. Inc.*, 321 Mass. 170, 72 N. E. 2d 422; *Steger v. Immen*, 157 Mich. 494, 122 N. W. 104.)

On the question of the landlord's negligence in leaving the door unlocked the court said in *Manning v. Sherman*, supra:

"It is not seriously contended that the leaving of this cellar door unlocked was not a negligent act. That was the proximate cause of the accident; and the single question that needs to be considered is, whether, under the evidence in this case, the defendant was legally liable therefor." (p. 333.)

And in *Foren v. Rodick*, supra:

"The conclusion is irresistible in the case at bar that the maintenance of the unfastened door and unguarded entrance to the cellar, in close proximity to the main entrance to the second floor of the building, without any sign or warning to distinguish the one from the other, and the attachment of the professional sign of a tenant to the building in such a position between the two doors as to leave it uncertain to which entrance it was designed to give direction, rendered the conditions connected with the approach to the main entrance of the building, misleading and dangerous. In this respect the building was improperly constructed and negligently maintained. . . ." (p. 282.)

In our opinion by virtue of these authorities the allegations of the plaintiff's amended petition under demurrer are sufficient to state a cause of action against the defendant Spears.

What of contributory negligence? Under the allegations of the amended petition is the plaintiff barred by her contributory negligence as a matter of law?

An examination of these same authorities also disposes of this question.

Here again the Kansas cases are not too much help; however, our cases have held uniformly that the question of the landlord's control of the premises, negligence, proximate cause and contributory negligence are to be determined by the jury. (*Hinthorn v. Benfer*, supra; *Donaldson v. Kemper*, 149 Kan. 330, 87 P. 2d 535; *Waterbury v. Riss & Company*, supra; *Mitchell v. Foran*, supra; *Bass v. Hunt*, supra; *Campbell v. Weathers*, supra; *Headington v. Central Building Co.*, supra.)

In the Bunnell case the court said:

". . . His negligence, if any, consisted not in opening the door, but in not looking after he had opened the door and before he had stepped across its threshold, with the dim light behind him and the darkness of the elevator shaft in front of him. His course of conduct must be judged as the circumstances would then appear to a reasonable man. There is no sign of warning on or about the door; it is unlocked; it opens into the elevator shaft. A partial step, the foot upon the sill as the door is opened, the balance lost, even a little, and the fall is inevitable. The decedent opens the door and falls in. The test of the conduct of the decedent is that of the ordinary man under the same circumstances, and that is always to be resolved by the jury or trier. . . ." (p. 525.)

In the Foran case the court said:

" . . The existing condition was not instantly manifest, but suspecting no danger she naturally stepped over the threshold simultaneously with the inward swing of the door. She was seeking to enter the building by the implied invitation of the defendants. She had a right to expect reasonable safety and convenience in the approaches. She was not required to use extraordinary precaution, but only such ordinary care and caution as persons of reasonable prudence, care and discretion usually and ordinarily exercise under such circumstances. And while the question is not free from doubt, it is the opinion of the court, after carefully weighing all of the evidence, that there is a preponderance in support of the proposition that the plaintiff was not guilty of contributory negligence, but may fairly be deemed to have been in the exercise of ordinary care." (p. 283.)

See, also, *Speck v. Northern Pac. Ry. Co.*, 108 Minn. 435, 122 N. W. 497 and the authorities cited above.

The plaintiff's amended petition does not bar her by contributory negligence as a matter of law.

The district court erred in sustaining the demurrer.

The judgment is reversed.

PARKER, C. J., and PRICE, J., dissenting.